IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ENFIN CORP.**, a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**CARL WELLS**, an individual; and<br>**FERRIN DELOACH**, an individual,<br><br>    Defendants. | COMPLAINT<br><br><br>Case No.: 1:24-CV-00149<br>Judge: _____ |

Plaintiff EnFin Corp. ("**EnFin**") by and through its undersigned attorneys, alleges against Defendants Carl Wells and Ferrin DeLoach ("**Defendants**") as follows:

#### Preliminary Statement

1.     Defendants are the principals of a business entity known as Wells Solar & Electrical Services, LLC ("Wells Solar").  Wells Solar arranges and completes installations of solar-power systems for residential customers.  When certain installation milestones are met, Wells Solar submits documentation of that work, and EnFin funds the project by depositing a large payment in Wells Solar's account.

2.     In September 2023, EnFin learned that Wells Solar had recently begun submitting false documentation regarding projects and that through those misrepresentations, Wells Solar had induced EnFin into funding nearly two dozen projects that Wells Solar had not, in fact, completed.

3.     EnFin believes these misrepresentations were directed and ratified by Defendants.

4.     EnFin immediately demanded that Wells Solar return the payments EnFin had made for those improperly funded projects, which amounted to more than $500,000.

15205368

5.     In response, Defendants claimed that Wells Solar had no money to pay EnFin and was functionally defunct.  EnFin believes Defendants were responsible for Wells Solar deliberately making misrepresentations in order to induce payments from EnFin that they could use to pay other debts, including by transferring funds to themselves.

6.     Through this suit, EnFin seeks to recover damages arising from Defendants' misrepresentations and to recover other consequential damages related to their misconduct, including damages associated with harm to EnFin's goodwill, reputation, and relationship with past and future customers.  To deter further egregious and deliberate misrepresentations, EnFin seeks punitive damages as well.

### Parties and Jurisdiction

7.     EnFin is a Delaware corporation headquartered in Irvine, California.

8.     On information and belief, Carl Wells is an individual residing in Austin, Texas.

9.     On information and belief, Ferrin DeLoach is an individual residing in Austin, Texas.

10.    This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the controversy is between citizens of different states.

11.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because the claims arose in this District.

15205368

## Facts

### *The EnFin Transaction Model*

12.   EnFin is a financial technology provider operating in the residential-solar-power industry, supported by a chartered financial institution (Hatch Bank) and backed by a solar manufacturer (Qcells).

13.   An EnFin transaction has three participants: an installer, a homeowner, and EnFin.

14.   The installer identifies an interested homeowner and gathers and submits documentation related to a potential loan and installation.  Once a homeowner's loan is approved, the installer completes the installation.  And once certain milestones are met, the installer receives a large payment related to the installation.  That payment covers the cost of the installed system, the labor associated with the installation, and—if the project is completed efficiently—some amount of profit to the installer.

15.   The homeowner's role is intended to be more streamlined.  In a well-executed transaction, the homeowner simply agrees to the installation, cooperates in the submission of loan documentation, and then has a solar-power system installed on their home.  To pay for that installation, the homeowner enters into a loan with EnFin (or with Hatch Bank).  The size of that loan is typically around $40,000, though that number may vary significantly depending on the size and sophistication of the homeowner's solar-power system.

16.   EnFin's role, then, is to act as the project's financer: it funds the project through its payment to the installer, and it receives, in return, the proceeds from the homeowner's loan.

15205368

***The Misrepresentations that Prompted EnFin's Payments to Wells Solar***

17.    On March 10, 2023, EnFin contracted with Defendants' entity, Wells Solar, to work as a solar panel installer.

18.    In that role, Wells Solar regularly submitted documentation to EnFin showing that homeowners had signed up for solar panel installations.

19.    In or around September 2023, EnFin identified misrepresentations made in such documentation of recently funded installations.  Specifically, EnFin noticed that photographs that were purportedly of homes awaiting new installations were actually photographs of homes that had previously been submitted to EnFin.  Such photos were being resubmitted in order to induce funding of installations that had not yet actually occurred.

20.    For the projects at issue in this litigation, Wells Solar transmitted to EnFin what Wells Solar represented were depictions of the installation projects at the homeowners' properties.  Those photographs appeared to show completed projects, and by providing those photographs, Wells Solar created the impression that it had substantially completed its installation work at the properties at issue.

21.    After receiving those photographs—and relying on the representation that those photographs were accurate photographs of work actually performed at the properties at issue— EnFin funded those projects by making payments into Wells Solar's account.

22.    That type of misrepresentation creates intractable problems for both EnFin and for affected homeowner consumers.

23.    Specifically, when a contractor like Wells Solar misrepresents that an installation is underway or complete—when, in fact, no such installation has begun or is even slated to begin

15205368

(that is, with equipment purchased, an installation crew arranged, etc.)—then both EnFin and a homeowner consumer are stuck: the homeowner has taken on a loan to pay for a solar system *that does not exist*, and EnFin has funded an installation (at the cost of tens of thousands of dollars) for a homeowner who is (to put it mildly) disinclined to may payments on the associated loan.

24.     For that reason, misrepresentations like Wells Solar's not only cause direct financial losses for EnFin, but also significant harm to EnFin's goodwill and reputation in the industry.

### *Subsequent Communications Between Wells Solar and EnFin*

25.     Given those stakes, EnFin acted swiftly to investigate other recently funded Wells Solar projects.  Based on an initial review, EnFin determined that roughly two dozen projects had been affected by Wells Solar misrepresentations.  EnFin's calculation of the total amount of payments associated with those two dozen affected projects comes to approximately $770,000.

26.     On or around September 22, 2023, EnFin representative spoke directly with Ferrin DeLoach, who EnFin understands is Wells Solar's Chief Financial Officer, and who EnFin also understands is married to Carl Wells, Wells Solar's owner.

27.     On that phone call, Ms. DeLoach did not deny that Wells Solar had misrepresented the status of numerous projects in order to induce funding. Instead, Ms. DeLoach represented that Wells Solar was in financial distress and, specifically, that Wells Solar had already spent or otherwise dissipated the EnFin funds that Wells Solar had obtained through misrepresentations.

28.     On September 27, 2023, EnFin demanded that Wells Solar refund all payments made by EnFin to Wells Solar that were affected by the misrepresentations at issue.

15205368

29.    In several follow-up calls and communications, Defendants and EnFin continued to discuss the details of affected projects and the total amount of affected payments.  Nothing raised in those conversations, however, altered EnFin's basic understanding of the violations at issue.

30.    Specifically, Defendants have never meaningfully disputed that somewhere between 15 and 25 projects were funded based on misrepresentations made by Defendants and their employees, that Defendants failed to return those funds when EnFin called for their return, and that a number of Texas owners have been enrolled in a loan program to pay for a solar system on their home that is not complete—and that Wells Solar apparently doesn't have either the intent or the capacity to complete.

### *The Role Played by Ferrin DeLoach and Carl Wells*

31.    On information and belief, Ferrin Deloach is Wells Solar's CFO and Carl Wells is its owner and a company executive.

32.    On information and belief, Wells Solar is—or has recently been—financially successful, producing tens of millions of dollars in annual revenue, with healthy margins and generous compensation for at least some members of its executive team (that is, Ms. DeLoach and Mr. Wells).

33.    The nature and timing of the misrepresentations made to EnFin suggest that those misrepresentations were not made by a "rogue employee" acting alone and without direction.

34.    In fact, among the most troubling findings of EnFin's review of Wells Solar-handled accounts is that the misconduct does not appear to stem from one or two bad actors.

15205368

35.    Rather, it appears that every Wells Solar employee handling every EnFin installation suddenly began to utilize the "playbook" for inducing EnFin into making unearned payments using false representations.

36.    That pattern demonstrates that Wells Solar employees were encouraged or even instructed to make these fraudulent misrepresentations by Wells Solar's owners and directors— that is, by Ms. Deloach and Mr. Wells.

### The Status of the Funded Projects

37.    Based on the information currently available to EnFin, the total amount of EnFin payments to Wells Solar for projects affected by Defendants' misrepresentations is $769,811.14.

38.    EnFin's actual damages stemming from Defendants' misrepresentations, including costs associated with addressing customer complaints, interest on the payments for affected projects, and its attorney fees and costs, will be significantly higher.

39.    Defendants' misrepresentations have also had a significant negative impact on EnFin's goodwill and reputation in the industry, in an amount to be proven at trial.

### Wells Solar and the Defendants' Alter-Ego Relationship

40.    As stated above, EnFin understands that DeLoach and Wells are married and that they serve as Wells Solar's primary—and perhaps sole—principals, executives, and decision-makers, with DeLoach serving as Wells Solar's Chief Financial Officer and Wells acting as its owner.

41.    On information and belief, the Defendants at all relevant times exercised complete control and dominion over Wells Solar and controlled voting, operations, and decision-making of those entities, either directly or indirectly.

7

42.   On information and belief, Wells Solar did not function independently and were wholly controlled by the Defendants either directly or indirectly.

43.   On information and belief, the Defendants have conducted their private and corporate businesses as if they were one.

44.   On information and belief, Defendants have used funds of Wells Solar for personal use.

45.   On information and belief, the funds of Wells Solar and of Defendants have been commingled. By way of example, DeLoach has represented to Wells Solar that she has at least contemplated selling real property she owns in a personal capacity and transferring the proceeds to Wells Solar.

46.   On information and belief, Defendants transferred funds or ownership interests in Wells Solar to each other and to other members of their family, to benefit themselves.

47.   On information and belief, Defendants treated Wells Solar's assets as their own.

48.   On information and belief, Wells Solar and the Defendants failed to deal at arm's length with each other.

49.   On information and belief, Defendants used Wells Solar as a conduit for their individual businesses or individual interests.

50.   On information and belief, the Defendants failed to keep Wells Solar as an independent entity.

51.   On information and belief, at all relevant times, there has been such a unity of interest and ownership between the Defendants and Wells Solar that the separate personalities of the

15205368

Defendants and Wells Solar no longer exist, and Wells Solar is, instead, an alter ego of the Defendants.

52.    On information and belief, Wells Solar is undercapitalized, has failed to observe corporate formalities, has been used by the Defendants to siphon funds and avoid debts, has nonfunctioning or nonexistent officers or managers other than the Defendants, fails to maintain corporate records, fails to pay dividends, and is used merely as a façade for the Defendants.

53.    On information and belief, EnFin would suffer irreparable harm but for veil piercing.

54.    Under these circumstances, any observance of the corporate form would sanction fraud, promote injustice, and/or result in an inequitable outcome.

55.    Accordingly, the corporate veil should be pierced and the Defendants are liable for any judgments owed by Wells Solar, and vice versa, as a matter of equity.

**First Claim for Relief**
**Fraudulent Misrepresentation**

56.    EnFin realleges each of the foregoing allegations as if fully set forth herein.

57.    Defendants had an independent duty to deal with EnFin fairly and honestly.

58.    Defendants made fraudulent misrepresentations to induce payment from EnFin for work that had not yet been completed and that, on information and belief, Defendants knew or had reason to believe would never be completed.  These fraudulent misrepresentations were material.

59.    Defendants falsely represented—or caused to be falsely represented—that work on the affected projects had been completed or had started or that certain milestones had been met.

15205368

60.   Defendants' representations were not true, as the work on the affected projects had not been completed, had not (in at least some instances) been started, and the milestones at issue had not been met.

61.   Defendants knew that these representations were false at the time they made these representations (or caused these representations to be made) to EnFin or recklessly made the representations without knowledge of the truth.

62.   Defendants made these material misrepresentations with the intent to induce payment from EnFin for work that had not yet been completed and that, on information and belief, Defendants knew or had reason to believe would never be completed, and took actions in furtherance of these intentions.

63.   Defendants were in a better position than EnFin to know of the aforementioned facts about this payment-inducing scheme.

64.   Defendants had a financial interest in inducing such payments because of their access to Wells Solar's account (or accounts) and because, on information and belief, Defendants redirected those payments for other business or personal use.

65.   EnFin reasonably relied on Defendants' misrepresentations in making payments to Wells Solar.

66.   As a direct and proximate consequence of the misrepresentations by Defendants, EnFin has been damaged in an amount to be proven at trial.

### Second Claim for Relief
### Intentional Interference with Contractual Relations

67.   EnFin realleges each of the foregoing allegations as if fully set forth herein.

68.   EnFin entered Loan Agreements with homeowners relating to the installation of solar systems on their homes.

69.   Defendants were aware of these Loan Agreements—indeed, the Loan Agreements were only entered because of Defendants' misrepresentations regarding the homeowner's interest in and progress toward completion of solar systems.

70.   Defendants made intentional misrepresentations regarding the installation of the solar systems, knowing these Loan Agreements would be breached, terminated, or otherwise disrupted by such misrepresentations.

71.   Defendants' actions constitute intentional interference with these Loan Agreements.

72.   As a direct and proximate consequence of Defendants' actions, EnFin has been damaged in an amount to be proven at trial.

<u>**Third Claim for Relief**</u>
**Intentional Interference with Prospective Business Relations**

73.   EnFin realleges each of the foregoing allegations as if fully set forth herein.

74.   EnFin's business model is based around entering new Loan Agreements with homeowners relating to the installation of solar systems on their homes.

75.   Defendants were aware that EnFin stands to obtain economic benefits from its relationships with these homeowners.

76.   Defendants made intentional misrepresentations regarding the installation of solar systems, making it less likely that EnFin will be able to sign up new homeowners through its Loan Agreement program.

15205368

77.    Defendants knew or reasonably should have known that such intentional misrepresentations would interfere with EnFin's relationships with potential homeowner customers.

78.    Defendants' actions constitute intentional interference with prospective business relations.

79.    As a direct and proximate consequence of the Defendants' actions, EnFin has been damaged in an amount to be proven at trial.

**Fourth Claim for Relief**
**Unjust Enrichment**

80.    EnFin realleges each of the foregoing allegations as if fully set forth herein.

81.    EnFin conferred a benefit on Defendants when it made at least $769,811.14 in payments for work that Defendants represented had already been completed.

82.    In making those payments, EnFin relied on Defendants' representations that appropriate milestones had been achieved and that the affected projects either had been or would be completed.

83.    Because of their access to Wells Solar's account (or accounts), and because, on information and belief, Defendants redirected those payments for other business or personal use, those EnFin payments also constitute a benefit conferred on Defendants.

84.    Defendants knew and appreciated that that benefit—that is, the $769,811.14 worth of payments—was conferred by EnFin on Defendants.

85.    Defendants accepted and retained that benefit, and the retention of that benefit by Defendants would be inequitable under these circumstances, as Defendants did not complete the affected projects.

86.    EnFin is therefore entitled to an award of damages from Defendants in an amount to be determined at trial, in an amount no less than the difference between the $769,811.14 worth of payments made by EnFin for the affected projects and the reasonable value (if any) of the work actually performed by Wells Solar.

## Fifth Claim for Relief
**Negligent Misrepresentation**

87.    EnFin realleges each of the foregoing allegations as if fully set forth herein.

88.    During the course of Defendants' business and in their guidance and consultation of EnFin, Defendants made representations to EnFin that the work on the affected projects had been completed or had started or that certain milestones had been met.

89.    Defendants' representations were not true, as the work on the affected projects had not been completed, had not (in at least some instances) been started, and the milestones at issue had not been met.

90.    Defendants sought to induce EnFin to fund the affected projects because Defendants had a pecuniary interest in inducing such payments.  Defendants had access to Wells Solar's account (or accounts) and on information and belief, Defendants redirected those payments for other business or personal use.

91.    Defendant did not use reasonable care in communicating these representations and/or failed to use reasonable care to determine whether their representations were accurate.

15205368

92.    EnFin actually and justifiably relied on Defendants' representations and funded the affected projects.

93.    As a result, EnFin suffered injury which was proximately caused by the false information provided by Defendants. EnFin is entitled to recover from Defendants actual damages, plus interest and costs allowed by law.

### Sixth Claim for Relief
### Conspiracy

94.    EnFin realleges each of the foregoing allegations as if fully set forth herein.

95.    Defendants have conspired among themselves and with Wells Solar to commit fraud and fraudulently induce EnFin to fund projects that were not completed or never started.

96.    On information and belief, Defendants and Wells Solar reached a meeting of the minds wherein they agreed to transmit to EnFin photographs of what appeared to be completed projects, and by providing those photographs, Defendants and Wells Solar created the impression that the installation work at the properties at issue were completed.  However, the installations were never completed and in some instances were never started.

97.    By using these photographs and making false representations that these projects were complete, Defendants and Wells Solar convinced EnFin to fund the affected projects.

98.    Wells Solar and each Defendant committed at least one overt act (including the acts described herein) in furtherance of the conspiracy.

99.    Because they conspired, the acts, words, and deeds of each conspirator are the acts, words, and deeds of every Defendant.

15205368

100.   As a direct and proximate result of Defendants' and Wells Solar's conduct and of the conspiracy, EnFin has incurred damages in an amount that is within the jurisdictional limits of this court.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, EnFin respectfully requests a judgment against Defendants as follows:

1.      For damages in an amount to be determined at trial, as described more specifically above, together with interest on that amount;

2.      For injunctive relief necessary to protect EnFin's interests, including but not limited to an order related to Defendants' handling of real property and other valuable assets;

3.      For an award of reasonable attorney fees and costs;

4.      For punitive damages arising from Defendants' willful and malicious misconduct and/or their knowing and reckless indifference towards the rights of EnFin and the affected homeowners; and

5.      For such other and further relief as the Court deems just and proper.

Dated: February 13, 2024.

Respectfully submitted,

By: */s/ Laura Alaniz*
   Laura Alaniz
   Attorney-in-Charge
   State Bar No.  00796110
   lalaniz@porterhedges.com
   **PORTER HEDGES LLP**
   1000 Main Street, 36th Floor
   Houston, TX  77002
   Telephone: (713) 226-6647
   Telecopy: (713) 226-6247

   **COUNSEL FOR PLAINTIFF**
   **ENFIN CORP**

15205368

OF COUNSEL:

C. Michael Judd (pro hac vice forthcoming)
Christian A. Vanderhooft (*pro hac vice forthcoming*)
mjudd@parsonsbehle.com
cvanderhooft@parsonsbehle.com
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UH  84111
Tel.: (801) 532-1234

15205368